Thank you, Judge O'Scanlon. Good morning. And may it please the Court, my name is Mark Caldwell. I'm representing Ms. Eckberg this morning in this Social Security disability case. I would like to inform the Court that I'm going to try to reserve two minutes for rebuttal, and I will, of course, be responsible for keeping track of my own time in that regard. I think we can all agree this is a little bit of an unusual case where the agency was affirmed at the district court level, claimed it appealed, and the agency changed its position and said, no, we want another bite at the apple. I've never had that happen before. The issues in this case revolve largely around the testimony of the medical expert who was an orthopedic surgeon called by the administrative law judge, Dr. Russo. So initially, Dr. Russo gave testimony that the vocational expert concluded would preclude even sedentary work. That's the simplest issue we have in this case, and since sedentary work is the lowest classification of work, should that testimony be accepted, and should the Court conclude that there are no other issues that must be resolved under the rule, which I'm sure we'll be discussing, then this would be a basis for remand for determination of benefits without considering any other issues. So you're suggesting, then, no remand, simply order benefits? That's what we're asking for, yes, Your Honor. So why isn't that affected by, or is it affected by, the recent decision of the circuit in, I guess it's pronounced, Tricler? Tricler, and then there was another one that the Court asked us to address, Burel, I think. And obviously, I studied those cases very carefully. I don't think those cases are troubling. I think that both of those cases involve just different judges looking at the same facts in different ways. I might get my cases confused here because I'm going by memory, but in Tricler, the Court said that there were unresolved issues regarding the claimant's credibility because there were different versions of when she could knit and vacuum. And in Burel, there was an issue because he testified he had bladder problems that caused him problems, accidents during the day, but the doctors indicated it was only at night. There were dissents in both of those, one by Judge Schroeder in Tricler, I believe, and the other by Judge Tashima in Burel. But that's just a matter of different judges looking at facts in different ways. You will not be surprised. Well, isn't there a credibility question here that was not previously resolved but sort of leaps out? For example, the fact that Ms. Eckberg, four months after she had said that she had certain abilities claimed after the initial denial of her benefits, that she had no such abilities to work, why isn't that something that ought to be explored as bearing on her credibility? That didn't strike me, again, as an issue on the record as a whole that would cast serious doubt on her disability. Orthopedic impairments do wax and wane. The Commissioner actually has a ruling in that regard, Ruling 96-7P, that says just because a person reports different levels at different times does not mean the person is not being credible. And I think that ruling would apply to the situation that you described. There is no doubt that Ms. Eckberg reported different symptoms at different times, different levels of symptoms at different times. That's simply not uncommon in cases dealing with orthopedic impairments. Yeah, but here the timing was very suspicious, was it not, both in how quickly the change occurred and the fact that it occurred right after an adverse decision? That's, I'm not trying to be facetious here. That's just the way the cookie crumbled. I mean, that was the difference in her symptoms at different times. Well, it may or may not be, but why shouldn't we give the ALJ a chance to examine that, look at all the circumstances? There's this bit about her not taking injections. There's other evidence that at least suggests that there is a basis for a meaningful credibility determination. Well, I can address the business about the injections first, if I may. These were, quote, unquote, steroid injections, as I understand it. This woman was not even able to tolerate an EMG test. An EMG test is a test where they put very small, thin needles. I've had the test. They put very small, thin needles into you to see whether the electric current is, from your nerves, is shooting the way it's supposed to. Well, if she couldn't stand that, then I can see where she would have a heck of a hard time dealing with the larger injections that go all the way into the joint. And again, I've had those injections, too, and they come at you to, you know, they needle that long. So I don't think that reflects upon her credibility. It just shows that she's scared of big, long needles. And again, the ruling I just cited to you, 96S7P, also addresses that, that some people are declining treatment because of the side effects of the treatment. There's one issue that I'd like to get to, because I can see my time is clicking away here, and that's the de Quervain syndrome, tenosynovitis. I think that's a really, really important part of this case because the orthopedic surgeon testified that repeated use of her hand would cause the tenosynovitis to be aggravated. And this is a point upon which there is very little case law, and I admitted in my brief. I found one district court case, and I found one Seventh Circuit case that said even if a person might technically be able to work, they should not be required to work if that would aggravate their symptoms. And I think that's a very important part of this case. Dr. Russo testified without contestation that if this woman returned to work using her hands, and all of her work involved bilateral manual manipulation, then that would aggravate the tenosynovitis. The commissioner believes that further testimony is needed about the extent of how much that would be and how often it would occur. And I can only reply in this fashion. I know Dr. Russo. He's a very good doctor, but he doesn't have a crystal ball. We can't tell him people's epilepsy is going to kick in. We can't tell him how often people are going to have headaches. We do know that the doctor gave uncontroverted testimony in that regard. May I reserve my time? Roberts. Yes, you may, certainly, counsel. Thank you. We'll hear from the government. May it please the court, I'm Jennifer Randall on behalf of the Commissioner of Social Security. The commissioner respectfully asks that this case be remanded for further proceedings because there are outstanding issues that must be resolved before a And the record as a whole creates serious doubt as to whether Ekberg met the statutory requirements for disability. The first outstanding issue that we have in this case concerns the nature, degree, and frequency of any limitations that Ekberg experienced as a result of her left side De Quervain syndrome. Non-examining doctor, Dr. Rousseau, said that Ekberg could sometimes have limitations from left side De Quervain syndrome, but he did not specify the nature, degree, and frequency of these limitations. I think it's also worth noting that he said De Quervain syndrome is not necessarily permanent. It's subject to spontaneous improvement. And at times Ekberg would have normal functioning in her hands. No treating or examining doctor in this case opined that Ekberg would experience limitation from De Quervain, and Ekberg refused to attend a consultative examination which was scheduled to clarify the extent of her limitations. While Ekberg has argued in her brief that the examination should have been Her treating sources declined to perform this examination. Ekberg and her counsel were informed of this in correspondence which can be found at page 181 of the excerpts of record. Robertson, I'm interested in the application of the credit as true rule in this case. Obviously, you've heard counsel who suggests that we shouldn't remand. We should order benefits on the basis of that rule. And we now have Burrell and we have Treichler. And I'm interested in the Commissioner's view of those two cases and how that applies to this one. I think that Treichler and Burrell both support the Commissioner's request for remand in this case. I seem to have the names perhaps different than my opponent did this morning. But I believe that in Treichler, the Court found that the claimant made conflicting reports about the frequency and degree of his symptoms. And the Court further observed that despite his alleged limitations, the claimant was able to perform the vast majority of his activities of daily living. Similarly, in Burrell, the Court found contradictions between the claimant's complaints of disability and the medical record. And the Court observed that although the claimant alleged limitations in the use of her hands, she continued to knit. Similarly, in this case, we have inconsistent reports from Ekberg about her activities, reports which, as the Court pointed out, changed only a few months after her initial statement and very shortly after her claim was denied initially. We also have contradictions with the medical record, including that Ekberg repeatedly declined injections which were recommended by her treating physician and which are standard care for de Quervain. Now, I know that this morning my opponent said that it might simply be a matter of his client not liking needles. However, the record shows that Ekberg previously accepted an injection for her shoulder and the doctor who administered the injection noted that she had excellent relief from the injection. So the record does not support that argument. Her refusal to accept that treatment, the other conflicts which we've spoken about today and in our brief, these raise an outstanding issue about the nature, degree and frequency of her limitations and create serious doubt as to whether Ekberg met the requirements for disability set forth in the Social Security Act. I also wanted to briefly touch on my opponent's argument this morning that work would aggravate Ekberg's underlying medical condition. As counsel, I think, has conceded, there are no Ninth Circuit cases on this point and even if the Court were to accept the general proposition, the record in this case simply does not support the argument. As I mentioned earlier, Dr. Rousseau said that Ducrevain is not necessarily permanent. It's subject to spontaneous improvement. At times Ekberg would have normal functioning in her hand. And there's also a question in this case, to what extent treatment, including treatment such as the injections recommended by Ekberg's treating doctor, which are standard care for Ducrevain, address any worsening or aggravation of symptoms. So not only is that argument unsupported by the case law, but it's unsupported by the record in this case. We have a second outstanding issue here and that concerns the vocational expert's testimony about Ekberg's ability to do her past relevant work and other work. It's undisputed that Ekberg is right-handed and that the Ducrevain is in her non-dominant left hand. But the vocational expert in this case was never posed a hypothetical involving limitations in the non-dominant hand. And so further proceedings are needed to address that point. Now I know that my opponent has argued that further proceedings are not needed because the vocational expert testified that Ekberg's past relevant work required frequent use of her hands for activities such as keyboarding and data entry, implied that these activities must be performed with both hands. While I'm not a vocational expert, I know that data entry can include using one hand to enter numbers or numerical codes on a 10-key number pad. The vocational expert in this case did not specify what type of data entry he was referring to. Further proceedings are needed to present a limitation in the non-dominant hand to the vocational expert and clarify this point. Finally, I believe that my opponent opened this morning by talking about Dr. Rousseau's opinion that Ekberg would be unable to sit for more than four hours a day and this would preclude even sedentary work. However, although he makes this additional assignment of error in this case, the ALJ gave valid reasons which were supported by the record for discounting this aspect of Dr. Rousseau's opinion. The ALJ correctly observed that imaging showed only mild to moderate degenerative changes in Ekberg's neck and only mild degenerative changes in her back. Dr. Rousseau himself characterized the arthritis in Ekberg's back, neck and shoulder as relatively minor. It's also worth noting that when he presented his opinion about her limitations, he commented that it was mainly based on her subjective complaints, which as we've discussed are subject to some question in this case. There were further contradictions identified by the ALJ in discounting Dr. Rousseau's opinion about Ekberg's ability to sit, including that the opinion was contradicted by the opinion of reviewing state agency Dr. Morelos, who reviewed the record and opined that Ekberg could sit for 6 hours a day. The ALJ was entitled to rely on this opinion, along with other inconsistencies in the record, because Dr. Morelos' opinion was consistent with other record evidence. Unless the panel has further questions in this case? No questions. Thank you, counsel. Thank you, Your Honor. The Commissioner respectfully asks that this case be remanded for further proceedings. Thank you. Mr. Carl, will you have some reserve time? Thank you. The limited time I have prevents me from addressing the legion of issues that I would like to address. But I want to make a couple comments before I go. But what's your strongest argument that we shouldn't simply remand for reconsideration on an open record? The strongest argument, number one, is Dr. Rousseau gave testimony that the vocational experts stated without contradiction would preclude sedentary work. The Reddick R-E-D-D-I-C-K case recognizes that in that case, remand for payment of benefits is appropriate. Number two, Dr. Rousseau testified without contestation that if this lady had to engage in work involving bilateral upper-extremity use, that would aggravate her decorvades tenosynovitis. And the proposition I am setting forth is that a person should not be required to perform work that would worsen their condition. The final comment I wanted to make, though, because we were talking about the Trankler and Burell and sort of the Garrison case, because it's in there, too, is this comment about this remedy being rare. With all due respect, I wish the Court would stop saying that. It almost makes it sound like it's a quota. If 100 cases come before this Court where the credit as true standard is satisfied and there are no further issues to be resolved, then 100 cases should be resolved, should be remanded for payment of benefits. If 100 cases come before this Court where the requirements of that rule are not satisfied, then none of those cases should be remanded for payment of benefits. The issue is whether it's an appropriate remedy, not how often it should be invoked. I think my time is up. Roberts. Thank you, counsel. The case just argued will be submitted for decision.
judges: Rakoff, O'scannlain, Clifton